

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable J. C. Roberts, Chief
Bureau of Records and Identification
Texas Prison System
Huntsville, Texas

Dear Sir:

Opinion No. O-5957
Re: Whether escaped prisoner
from original commitment
to State penitentiary is
to receive credit for
time spent under a later
commitment to a Federal
penitentiary for a Fed-
eral offense. And a re-
lated question.

Your letter of recent date addressed to this of-
fice, reads as follows:

"As custodian of records for inmates of the
Texas State Penitentiary, I should like to have
the benefit of your opinion on two questions in-
volving the above named and numbered inmate.

"Baird was received Huntsville Prison May
20, 1942 with a sentence of 10 years (2to10, &
2,#3-2to5's & 2-5's Con) from Fort Bend, Nueces,
Victoria, Montgomery and Rusk Counties. His
crimes were; Assault to murder (1), Theft (2),
Felony Theft (1), Theft by Bailee (1), Burglary
(1) and Automobile Theft (1). (The 2to5 year
sentence was given him in Rusk County on Bench
Warrant May 30, 1942). This aggregate sentence
was to begin as of April 21, 1942.

"Subject was released on Bench Warrant to
Sheriff W. A. Smith of Live Oak County, Texas on
June 2, 1942 and regular receipt was taken from
the Sheriff, copy of which is attached hereto.

726

"On or about June 25, 1942, Baird escaped jail at George West, Live Oak County, Texas; later being involved in some Federal offenses, apprehended by their officers, convicted and committed to Leavenworth Penitentiary. Said conviction (Federal) was within the state of Texas.

"Just prior to his escape from jail, or on June 11th, 1942, Baird was tried in Live Oak County for the offense of cattle theft in two cases and given two (2) 2to10 year sentences running concurrently and beginning as of June 11, 1942. - Live Oak Co.'s Causes 1524-1525.

"I should like to know whether or not his time under his original commitment should be permitted to run concurrent with the time he is now serving in the U. S. Penitentiary at Leavenworth, or whether it should be stopped on the date of his escape from jail (6/25/42).

"Also, in view of the receipt taken from the Sheriff, together with the usual judgment of the Court in the two new cases received in Live Oak County, is the Texas Prison System obliged to return Baird to its jurisdiction at the expiration of his term in Federal Prison, or should the Sheriff of Live Oak County be required to deliver him to either the Penitentiary or its agent."

This is not a question of sentences for different offenses by different courts of the same sovereignty.

This is a question of sentences by different sovereignties for different offenses.

May a convicted criminal who has been tried, sentenced and committed under our State laws, but who escapes, and while thus a fugitive from justice commits another crime against the laws of another sovereignty (Federal) and has been arrested, convicted and sentenced to the Federal prison by Federal authorities, receive credit for the time served

Honorable J. C. Roberts, page 3

in the Federal prison on his commitment under the earlier State sentence?

We think not. If we held otherwise, then in such a case the State would be powerless to punish an offender against its laws. Furthermore, it would allow an offender to almost choose his sovereignty of imprisonment and receive credit on an earlier sentence by another and different sovereignty for a different crime, the imprisonment of which he escaped.

To hold otherwise would nullify the effect of our State courts' judgments and sentences.

In People, ex rel. Courtney v. Thompson, 192 N.E. 693, 358 Ill. 81, the court said on a similar set of facts:

"In the case before us the courts were of two entirely different sovereignties and the two places of confinement were also entirely different. The rule relied on (concurrent sentences) cannot be made to apply to the case of a prisoner sentenced by a State court to the State penitentiary for an offense against State laws and the same prisoner (later) sentenced to a federal prison for an offense against the laws of the U. S."

In Ex parte White, 296 P. 756, 50 Okla. Cr. 163, the court held that "where sentences are imposed by different sovereignties, they are sentences by different jurisdictions and could not run concurrently."

And in Ex parte Tanner, (Sup. Ct. Calif.), 175 P. 81, the court said "that petitioner was not while in the Ohio prison, imprisoned in execution of the California judgment and that he cannot be credited with any portion of such time." There, the escaped prisoner had been imprisoned in Ohio merely awaiting return to California to finish his sentence.

Nor are we unmindful of Ex parte Lawson, 98 Tex. Cr. App. 544, 266 S.W. 1151, where at the time of sentence

Honorable J. C. Roberts, page 4

by our State court, the convict was serving time in the U.S.
prison, and the failure to declare in the State court sen-
tence that it should be deferred until released from Fed-
eral penitentiary, left the sentence concurrent with that
of Federal, in view of code provision declaring that term
shall commence from time of sentence.

The court said:

"On the present record, it is apparent
that at the time the sentence was entered under
which the relator is now held, he, with the
knowledge of the learned judge who tried the
case, was a prisoner of the United States gov-
ernment, in custody of its officers, and con-
demned to serve in its penitentiary for a per-
iod of one year. It was obviously apparent
that, giving effect to this sentence, the re-
lator's term of imprisonment in the state prison
could not begin until he was released from the
federal penitentiary. Possessed of this knowl-
edge, it would seem evident that it was within
the discretion of the district court of the
state in which the relator was condemned to de-
clare in the judgment that the beginning of his
service in the penitentiary of the state of
Texas should be deferred until released by the
federal authorities. The failure to incorporate
this in the judgment, under the circumstances,
seems to us to imply an intent to leave the sen-
tence in the state court concurrent with that
in the federal court. Except in cases of es-
cape of the prisoner after conviction, we are
aware of no instances in which it has been ju-
dicially determined that he may be held in prison
after the date on which his term of imprison-
ment would expire, counting its beginning from
the date the judgment of conviction rendered
became final. The language of the court in
Sartain's Case, 10 Tex. App. 655, 38 Am. Rep.
649, supports this view. It reads thus:

"'The obvious construction of article 825
(now article 862) is simply this -- that when a

Honorable J. C. Roberts, page 5


party is condemned to the penitentiary for any
term of months or years he must be imprisoned
in the penitentiary, but, after he has reached
and been actually confined in said penitentiary,
the term of his imprisonment may be estimated
to begin from the date of sentence.'

"We have neither found nor been referred
to any precedent to the contrary. The other de-
cisions to which our attention has been drawn,
in so far as they throw light upon the subject,
seem to favor rather than oppose the relator's
position. See Ex parte Davis, 71 Tex. Cr. R.
538, 160 S.W. 459, supra. While the question
is not free from difficulty, . . ."

It will be observed that in the facts you present
the situation is reversed as regards the sentences in point
of time by the sovereignties.

Further, the court's language in Ex parte Lawson,
supra, shows that the court realized it was an unusual situ-
ation, that two different sovereignties were involved, the
"peculiar facts" of the case, and the "discretion of the
district court" in determining the place of service (Federal
or State prison) of the sentence.

Wherein, would the State have that discretion if we
should hold he receives credit? Wherein, if we should hold he
receives credit, does the State punish for a violation of its
laws? If we should hold he receives credit, do we not nullify
our State court's judgment and sentence?

In view of the foregoing and in answer to your first
question, we feel Baird's time under his original commitment
should be stopped on the date of his escape from jail.

With regard to your second question, we feel it is
controlled by our Opinion No. 0-4515, dated June 2, 1942, a
copy of which we enclose.

730

". . . where, as in this case, a party has been legally charged under the laws of the state with an offense, and this case has been prosecuted and conviction and judgment found against him affirming the truth of the matters contained in the information and adjudging all the consequences of conviction, it would seem that in reason that after such conviction he could be extradited. . . ." Ex parte Bergman, 60 Tex. Crim. 8, 130 S. W. 174.

In the event Baird waives extradition, we find no statutory duty on either the sheriff or the prison system agent to go to the Federal penitentiary at Leavenworth and return the prisoner. A Texas Ranger may be sent with instructions to return him to Huntsville.

If he refuses to waive extradition, the Governor may, upon proper application, commission any suitable person to take such requisition.

We cannot say there is an obligation on one more than the other to effect the return of Baird after his service of Federal sentence.

We therefore cannot answer your second question categorically.

Trusting this satisfactorily answers your inquiry,

Very truly yours

ATTORNEY GENERAL OF TEXAS

By _Fred C. Chandler_
Fred C. Chandler
Assistant

By _Alton M. Hyder, Jr._
Alton M. Hyder, Jr.

APPROVED MAY 31, 1944

_Blackburn_
ATTORNEY GENERAL OF TEXAS

AMH:db

Enclosure

APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN